UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

| | |
|---|---|
| AMY TAORMINA, <br><br> Plaintiff, <br><br> vs. <br><br> CAROLYN W. COLVIN, Acting Commissioner, Social Security Administration; <br><br> Defendant. | 5:14-CV-05089-KES <br><br> MEMORANDUM OPINION AND ORDER AFFIRMING THE DECISION OF THE COMMISSIONER |

Plaintiff, Amy Taormina, seeks review of the decision of the Commissioner of the Social Security Administration denying her claim for disability insurance benefits under 42 U.S.C. § 423. The Commissioner opposes the motion and urges the court to affirm the denial of benefits. For the following reasons, the court affirms the decision of the Commissioner.

**PROCEDURAL HISTORY**

Taormina filed an application for disability insurance benefits on November 2, 2011. AR 8.  The Commissioner denied her claim initially on April 5, 2012, and upon reconsideration on October 4, 2012. *Id.*  Taormina received a hearing before Administrative Law Judge (ALJ) James W. Olson on August 28, 2013. *Id.*  On September 20, 2013, the ALJ issued an opinion affirming the denial of benefits. AR 8-25.  On October 1, 2013, Taormina filed a request for review with the Appeals Council. AR 65. The Appeals Council denied Taormina's request for review, therefore Taormina's appeal of the

Commissioner's final decision is properly before the court pursuant to

42 U.S.C. § 405(g).

## FACTUAL BACKGROUND

Taormina is a 37-year-old veteran who served in the United States Air Force from 1998 to 2004. She is married and has four children. After discharge from the Air Force, Taormina worked in several short-term positions before entering cosmetology school in 2008. From September 2010 to April 2011, Taormina worked as a hair stylist in Rapid City, South Dakota. At the recommendation of her psychiatrist, Dr. Thomas Jewitt, Taormina left her cosmetology position in April 2011.

Taormina has a long history of psychological and medical treatment. On December 17, 2008, Taormina was committed to the VA Medical Center in Hot Springs, South Dakota due to a suicide attempt. Dr. Jewitt treated Taormina during the commitment. In the discharge summary, Dr. Jewitt formally diagnosed Taormina with borderline personality disorder. AR 274. Since that time, Taormina has met regularly with Dr. Jewitt and Christel Kitzelman, a social worker.

On April 1, 2011, the alleged date of disability, Taormina was admitted to a psychiatric inpatient unit following a meeting with Kitzelman. AR 271. Toarmina ingested ten clonazepam during the meeting. According to Dr. Jewitt, Taormina was not attempting to kill herself. Instead, she sought to have her desperation heard by her physicians. AR 272. As a result of these medical observations, Dr. Jewitt diagnosed Taormina with bipolar disorder type II. In

the closing remarks of his report, Dr. Jewitt stated that he did not believe that Taormina was employable at that time "as her mental disorder creates far too many symptoms for her to be able to cope to seek and maintain sustained competitive employment." AR 273. Despite this finding, Dr. Jewitt stated that Taormina's prognosis "is felt to be good." *Id.*

From April 2011 through 2013, Taormina repeatedly sought medical examination, treatment, and psychological counseling. Physicians continually diagnosed her with depression, anxiety, bipolar disorder, fibromyalgia, and migraines; they proscribed a cocktail of drugs to counteract the symptoms. During this period, Taormina received counseling from Kitzelman on a monthly basis and met less frequently with Dr. Jewitt to manage her medication regimen. Kitzelman helped Taormina examine her psychological stressors as well as learn new coping skills. After the April 2011 hospitalization, treatment notes indicate that Taormina was emotionally stable throughout 2011, 2012, and 2013.

On October 26, 2012, Dr. Jewitt completed a Medical Source Statement of Ability to do Work Related Activities as a formal opinion for the Social Security Administration Office of Disability Adjudication and Review. AR 388. Dr. Jewitt's report indicated that he believed Taormina's impairments created mild restrictions on her ability to understand, remember, and carry out simple instructions. *Id.* Additionally, Dr. Jewitt believed her impairments created mild restrictions on her ability to make judgments on simple work-related decisions. *Id.* The report also indicated that Taormina's impairments created moderate

3

restrictions on her ability to understand, remember, and carry out complex

instructions as well as the ability to make judgments on complex work-related

decisions. *Id.* Finally, the report stated that Taormina had moderate

restrictions on daily interaction with the public, supervisors, and coworkers. *Id.*

Roughly nine months later, on August 9, 2013, Dr. Jewitt wrote a letter

to Taormina's attorney. The letter stated the following:

> I have treated Amy for Bipolar Disorder since 2008. During that
> time I have had numerous opportunities to evaluate her condition
> and assess aspects of the disorder that may have an impact on
> employability. While the level of impairments noted on the Medical
> Source Statement do not overall exceed a moderate level of
> impairment, the combination of the multiple areas of dysfunction
> make seeking and maintaining sustained competitive employment
> quite problematic for this patient.
>
> Most severely troublesome are the high degrees of anxiety that she
> suffers from when she must deal with multiple tasks in a timely
> and organized manner. While she possibly could function in a very
> low stress part time job (<20hr/week) with good job coaching and
> support, the expectations of reliability, timeliness and sequential
> task management would make a 30-40hr/week job impossible. It
> should be noted that she is very compliant with treatment, and it
> is only through that that she has a moderate degree of impairment.
> Otherwise the impairments would be quite severe.

AR 478.

## 2013 ADMINISTRATIVE HEARING

The ALJ considered testimony from three witnesses at the hearing:

Robert Pelc, Ph.D., Taormina, and Jerry Gravatt. Pelc is a clinical psychologist

who the Social Security Administration utilizes for independent review of a

claimant's alleged disability. Gravatt is a vocational expert who is also utilized

by the Social Security Administration to help determine whether the claimant

4

possesses the ability to maintain full-time employment in the local and national economy.

In addition to testifying during the administrative hearing, Pelc also prepared a Medical Source Statement. AR 475. Pelc relied upon Taormina's medical records, Dr. Jewitt's 2012 Medical Source Statement, and Dr. Jewitt's 2013 letter to Taormina's attorney. Pelc testified that he agreed with Dr. Jewitt's 2012 Medical Source Statement and stated that the record "did not support more than moderate limitation though in terms of [Taormina's] function and capacity[.]" AR 37-38. Additionally, Pelc testified that Dr. Jewitt's 2013 letter sent to Taormina's attorney was inconsistent with the objective medical evidence and Dr. Jewitt's 2012 Medical Source Statement. AR 40.

Taormina's testimony revolved around her symptoms and the problems that she faces in an ordinary day. According to Taormina, she suffers from exhaustion and is forced to sleep the majority of the day. When she performs general housework, she suffers pain from fibromyalgia and has digestive issues from irritable bowel syndrome. Additionally, she contends that she suffers from severe anxiety and bipolar-disorder symptoms when she enters a public area or interacts socially with her friends and family.

Gravatt's testimony indicated that someone with Taormina's impairments could perform multiple jobs that exist in the national economy. Specifically, Gravatt listed positions such as a small products assembler, a production assembler, and a bench assembler.  AR 57. According to Gravatt, these positions exist in an environment where an individual would not have to

5

interact with coworkers more than half the time and the assembly procedures would not require more than a simple, two-step process.

## 2014 ALJ DECISION

Employing the five-step analysis associated with an application for social security benefits, the ALJ denied Taormina's claim on September 20, 2013. In Step One, the ALJ found that Taormina met the insured status requirements through March 31, 2014, and that Taormina had not engaged in substantial gainful activity since April 1, 2011, the alleged onset date of disability. In Step Two, the ALJ held that Taormina suffered from the following severe impairments: migraine headaches, fibromyalgia, bipolar disorder, and personality disorder. In Step Three, the ALJ held that Taormina's severe impairments do not meet or equal the severity required for a finding of disability under 20 C.F.R. § 404.1520. In Step Four, the ALJ held that Taormina has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b).[1] Additionally, the ALJ found that Taormina's residual functional capacity (RFC) prevents her from performing her past relevant work as a hair stylist. In Step Five, the ALJ held that there are multiple jobs in the national economy that Taormina can perform. Accordingly, the ALJ held that Taormina was not disabled under the Social Security Act.

---

[1] The ALJ held that Taormina has the following physical and psychological limitations: [S]he can only occasionally climb, stoop, kneel, crouch, or crawl. She has an unlimited ability to balance. She must avoid concentrated exposure to noise, fumes, odors, dusts, gases, or poor ventilation. She can understand, remember, and carry out no more than two and three step instructions . . . She can interact appropriately with coworkers, supervisors, or the public somewhat less than half the time[.]" AR 12.

6

## STANDARD OF REVIEW

The court must uphold the ALJ's decision if it is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g) ("The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive . . . ."); *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). "Substantial evidence is 'less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.' " *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Maresh v. Barnhart*, 438 F.3d 897, 898 (8th Cir. 2006)). The court considers evidence that both supports and detracts from the ALJ's decision. *Moore v. Astrue*, 623 F.3d 599, 605 (8th Cir. 2010). If the Commissioner's decision is supported by substantial evidence in the record as a whole, the court may not reverse it merely because substantial evidence also exists in the record that would support a contrary position or because the court would have determined the case differently. *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (citing *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993)).

The court also reviews the Commissioner's decision to determine if an error of law has been committed, which may be a procedural error, the use of an erroneous legal standard, or an incorrect application of the law. *Collins v. Astrue*, 648 F.3d 869, 871 (8th Cir. 2011) (citations omitted). Issues of law are reviewed de novo with deference accorded to the Commissioner's construction of the Social Security Act. *Id.* (citing *Juszczyk v. Astrue,* 542 F.3d 626, 633 (8th Cir. 2008)).

## THE FIVE STEP PROCEDURE FOR DISABILITY DETERMINATIONS

Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  "An individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). An ALJ must apply a five-step procedure when determining if an applicant is disabled. *Smith v. Shalala*, 987 F.2d. 1371, 1373 (8th Cir. 1993).  The steps are as follows:

**Step One**: Determine whether the applicant is presently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b).

**Step Two**: Determine whether the applicant has an impairment or a combination of impairments that are severe. 20 C.F.R. § 404.1520(c).

**Step Three**: Determine whether any of the severe impairments identified in Step Two match the listing in Appendix 1. 20 C.F.R. § 404.1520(d).

**Step Four**: Considering the applicant's RFC, determine whether the applicant can perform any past relevant work. 20 C.F.R. § 404.1520(e).

**Step Five**: Determine whether any substantial gainful activity exists in the national economy that the applicant can perform. 20 C.F.R. § 404.1520(f).

## DISCUSSION

Taormina urges the court to reverse the ALJ's decision for the following reasons: (1) the ALJ should have allocated controlling weight to Dr. Jewitt's 2013 opinion; (2) the ALJ erred by rejecting the credibility of Taormina's testimony about her symptoms; and (3) the ALJ erred when he relied upon vocational-expert testimony that was not based upon a properly phrased hypothetical question. Additionally, Taormina requests that the court direct the Social Security Administration to award benefits to Taormina.

## I.   The ALJ gave appropriate weight to the testimony of Dr. Jewitt and Taormina.

In sections I and II of her brief, Taormina argues that the ALJ improperly rejected the 2013 opinion of Taormina's treating physician, Dr. Jewitt. Additionally, Taormina alleges that the ALJ erroneously found her testimony to not be credible. These arguments pertain to step four of the ALJ's decision.

In step four, the ALJ must determine the claimant's RFC. 20 C.F.R. § 404.1520(a)(4). A claimant's RFC "is the most [she] can still do [in a work setting] despite [her] limitations." 20 C.F.R. § 404.1545(a)(1). The RFC assessment is an indication of what the claimant can do on a "regular and continuing basis" given the claimant's limitations. 20 C.F.R. § 404.1545(b). " 'The ALJ should determine a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations.' " *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*,

361 F.3d 1066, 1070 (8th Cir. 2004)). The RFC must include the limitations from all medically determinable impairments, regardless of whether they are considered severe. *See* SSR 96–8p, 1996 WL 374184 at *5 (SSA 1996).

### A.   Dr. Jewitt's 2013 opinion is not entitled to controlling weight.

Under RFC analysis, a treating physician's testimony is generally entitled to controlling weight, *Finch v. Astrue*, 547 F.3d 933, 936 (8th Cir. 2008), but "it is not conclusive because the record must be evaluated as a whole." *Id.* In fact, an ALJ may "discount or even disregard the opinion of a treating physician where . . . a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000) (citations omitted). If a treating physician's opinion is not given controlling weight, the ALJ should consider several factors in weighing it and any other medical opinions in the record, such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion, and the specialization of the source. 20 C.F.R. § 404.1527(c). The ALJ must always give good reasons for the weight afforded to a treating physician's evaluation. 20 C.F.R. § 404.1527(c)(2); *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000).

Here, the ALJ provided three reasons for allocating limited weight to Dr. Jewitt's 2013 opinion. AR 22. First, the ALJ identified how Dr. Jewitt's 2013 opinion was inconsistent with his 2012 opinion. *Id.* Second, the ALJ held that the objective medical evidence did not support Dr. Jewitt's 2013 opinion.

Finally, the ALJ determined that Dr. Jewitt's opinion was inconsistent with Pelc's opinion.

There is ample evidence in the record to support the ALJ's determination that Dr. Jewitt provided inconsistent medical diagnoses and opinions over the time period at issue. In 2011, Dr. Jewitt reported that Taormina was not employable because her mental disorders created far too many symptoms for her to maintain competitive employment. AR 273. But in that same report Dr. Jewitt stated that her prognosis is still "felt to be good." *Id.* In the 2012 Medical Source Statement that Dr. Jewitt completed for the purpose of providing a formal opinion as to whether Taormina can "perform work-related activities eight hours a day for five days a week[,]" Dr. Jewitt stated Taormina's limitations ranged from mild to moderate. AR 388. The report defined a moderate limitation as "more than a slight limitation in this area, *but the individual is still able to function satisfactorily.*" *Id.* (emphasis added). Then, in 2013, Dr. Jewitt sent Taormina's attorney a letter stating that she "possibly could function in a very low stress part time job (<20hr/week) with good job coaching and support[.]" AR 478. With opinions ranging from a recommendation that Taormina stop working completely to submitting a formal report with the Social Security Administration stating that Taormina can function satisfactorily for 40 hours per week, substantial evidence supports the ALJ's determination that Dr. Jewitt's opinion varied significantly from 2011 to 2013.

There is also sufficient evidence to establish that Dr. Jewitt's 2013 opinion is inconsistent with the objective medical evidence. The ALJ stated that "treatment records indicate that the claimant has maintained a relatively stable mood since the April 2011 hospitalization despite dealing with numerous stressors in her life." AR 22. An examination of the record confirms as much. From April 2011 through July 2013, Taormina's medical records from her treatment sessions with Dr. Jewitt and Kitzelman indicate that she experienced minimal anxiety and depressive symptoms and was generally stable due to her medication regimen and counseling. Dr. Jewitt's 2013 letter, however, describes Taormina's symptoms as "high degrees of anxiety" and "multiple areas of dysfunction," which render full-time employment "impossible." AR 478. When compared to treatment records, the contrast between Dr. Jewitt's 2013 letter and the objective medical evidence becomes clear. Because of the stark difference between the treatment notes in the record and Dr. Jewitt's letter to Taormina's counsel, substantial evidence supports the ALJ's conclusion that Dr. Jewitt's 2013 letter is inconsistent with the objective medical evidence.[2]

There is also substantial evidence in the record that indicates Dr. Jewitt's 2013 opinion is distinct from that of Pelc. Pelc's testimony in the

---

[2] The Commissioner asserts that an ALJ can discount a physician's opinion when it appears to be linked to the claimant's desire to obtain benefits. Docket 14 at 7 (citing *Hurd v. Astrue*, 621 F.3d 734, 739 (8th Cir. 2010)). While the court agrees with this general proposition, the ALJ did not make a finding that Dr. Jewitt's 2013 opinion was linked to a quest for benefits. Therefore, such an assertion is not applicable to the court's review.

12

administrative hearing and the opinion provided in the Medical Source
Statement indicate that he agrees with Dr. Jewitt's 2012 Medical Source
Statement, recognizing a mild to moderate level of impairment. But as the
testimony highlights, Pelc believes that Dr. Jewitt's 2013 letter to Taormina's
counsel seeks to qualify his report from 2012. Dr. Jewitt's 2013 letter to
counsel states "[w]hile the level of impairments noted on the [2012] Medical
Source Statement do not overall exceed a moderate level of impairment, the
combination of the multiple areas of dysfunction make seeking and
maintaining sustained competitive employment quite problematic for
[Taormina.]" AR 478. Based on the foregoing, a reasonable person could find
that Dr. Jewitt's statement is an attempt to qualify his previous opinion and
provides ample support for the ALJ's determination that Dr. Jewitt's 2013
opinion is inconsistent with that of Pelc and the objective medical evidence.

    For the court to find that substantial evidence supports an ALJ's
decision to give limited weight to a treating physician, it must find that the ALJ
provided "good reasons" for allocating such limited weight. *Singh*, 222 F.3d at
452. The ALJ detailed multiple reasons why he allocated limited weight to Dr.
Jewitt's 2013 opinion: Dr. Jewitt's medical opinions were inconsistent over
time, they were inconsistent with the objective medical evidence, and they were
inconsistent with Pelc's opinion. Even though the court would not have given
such significant weight to the testimony of Pelc considering he is a consulting
expert, the court finds that the ALJ gave proper weight to Dr. Jewitt's
testimony because his opinions were inconsistent over time and with the

objective medical evidence. These inconsistencies undermine the credibility of his 2013 opinion. *See Prosch*, 201 F.3d at 1013. Thus, the court finds that substantial evidence supports the ALJ's decision to give limited weight to the opinion of Dr. Jewitt. The ALJ's decision is affirmed as it pertains to Dr. Jewitt's opinion.

**B.    The ALJ properly discredited Taormina's complaints about her physical and psychological symptoms.**

When evaluating a claimant's credibility, and ALJ should consider the following factors: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. *Buckner v. Astrue*, 646 F.3d 549, 558 (8th Cir. 2011) (citing *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984)); *see* 20 C.F.R. § 404.1529. "The ALJ is not required to discuss methodically each *Polaski* consideration, so long as [the ALJ] acknowledged and examined those considerations before discounting [the claimant's] subjective complaints." *Steed v Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) (internal quotation omitted). An ALJ must make express credibility determinations detailing reasons for discounting a claimant's subjective complaints. *Dipple v. Astrue*, 601 F.3d 833, 837 (8th Cir. 2010). An ALJ's credibility determination is entitled to deference because the ALJ is in a better

14

position than a reviewing court to gauge credibility. *Travis v. Astrue*, 477 F.3d 1037, 1042 (8th Cir. 2007).

In this case, the ALJ held that "the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, her statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible." AR 18. In support of this determination, the ALJ lists six general reasons. Taormina takes issue with the analysis pertaining to her migraines and the impact of her psychological issues on her ability to maintain full-time employment.

As to the severity of migraines, the ALJ held that the objective medical evidence does not support Taormina's claim that she suffers from three to five debilitating migraines per week. The ALJ noted that "[Taormina] required emergency room treatment for a headache on only one occasion," and received only one pain-suppressing injection during the relevant period. AR 18. Additionally, the ALJ noted that Taormina typically utilizes only over-the-counter medicine and a low dose of Amitriptyline[3] to combat her headaches. *Id.* In regard to the severity of her psychological issues, the ALJ stated that "the evidence indicates that the claimant has had a sporadic work history with limited earnings since she left active duty with the United States Air Force." AR 19. Also, because she receives service-connected disability benefits from the VA, "she does not have a significant amount of incentive to return to work." *Id.*

---

[3] Amitryptyline is an antidepressant drug that also suppresses symptoms from headaches. AR 43; 246.

Taormina argues that the ALJ erred in the analysis regarding her symptoms of migraine headaches because her treatment records show that she complained frequently about her headaches. Additionally, Toarmina argues that taking over-the-counter medication and Amitryptyline provide support for her assertion that she suffers from severe headaches. While the use of over-the-counter medicine and Amitryptyline offers some support for the existence of headache symptoms, it does not persuade the court that the ALJ's credibility determination lacks substantial evidence. By comparing the assertion that Taormina suffers from three to five debilitating migraines per week to her relatively minor drug regimen, a reasonable person could easily find it unlikely that she suffers from such severe symptoms.[4] Thus, substantial evidence supports the ALJ's analysis regarding the credibility of Taormina's description of her migraine symptoms.

Next, Taormina argues that the ALJ erred by interpreting her current receipt of VA benefits and sporadic work history as a symptom of a disincentive for finding employment. Taormina argues that her receipt of VA disability benefits is evidence that she suffers from significant mental and physical impairment. Moreover, Taormina urges the court to interpret her sporadic work history as consistent attempts to pursue gainful employment despite her

---

[4] The Commissioner also argues that Eighth Circuit precedent precludes a determination that Taormina's alleged migraines are disabling because they are controlled with treatment. *See Moore v. Astrue*, 572 F.3d 520, 525 (8th Cir. 2009); *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007). The ALJ has determined that Taormina suffers from some migraine-related symptoms, just not to the extent she described in her testimony. Therefore, the line of cases cited by the Commissioner is not relevant in this analysis.

16

impairments. Eighth Circuit precedent recognizes that an ALJ can consider a claimant's motivation, or lack thereof, for obtaining full-time employment in this credibility determination. *See Buckner*, 646 F.3d at 558. Therefore, it was within the ALJ's purview to consider Taormina's potential lack of motivation when examining the credibility of the psychological impairments she describes.

In accordance with the *Polaski* framework, the ALJ has considered Taormina's subjective testimony, medical evidence relating to symptoms and pharmaceutical care, her daily activity, and her work history. Taormina cites no error of law in the ALJ's analysis. Instead, Taormina asks the court to reverse the ALJ's decision based upon a factual review of the record. Because a reasonable person could arrive at the ALJ's conclusion regarding Taormina's credibility, the court must give deference to that determination. *Travis*, 477 F.3d at 1042.  Thus, the ALJ's decision is affirmed as it relates to the credibility determination regarding Taormina's testimony about her symptoms.

## II.   The ALJ relied upon a properly phrased hypothetical question posed to the vocational expert.

In step five, the ALJ must consider the claimant's RFC, age, education, and work experience to ascertain whether the claimant can adjust to other types of employment. *See* 20 C.F.R. § 404.1520(a)(4)(v). In order to find that the claimant is capable of performing other types of work, the ALJ must provide evidence that "demonstrates that other work exists in significant numbers in the national economy" that the claimant can perform. *See* 20 C.F.R. § 404.1560(c)(2). When a claimant suffers from nonexertional impairments, an

17

ALJ should rely upon the opinion of a vocational expert in this analysis. *Pearsall v. Massanari*, 274 F.3d 1211, 1220 (8th Cir. 2001). It is common practice for an ALJ to pose hypothetical questions to vocational experts to ascertain whether jobs are available for someone with the claimant's impairments. *See Cox v. Astrue*, 495 F.3d 614 (8th Cir. 2007). "A hypothetical question posed to the vocational expert is sufficient if it sets forth impairments supported by substantial evidence in the record and accepted as true by the ALJ." *Hunt v. Massanari*, 250 F.3d 622, 625 (8th Cir. 2001). The hypothetical question "need not frame the claimant's impairments in the specific diagnostic terms used in medical reports, but instead should capture the 'concrete consequence' of those impairments." *Lacroix*, 465 F.3d at 889 (quoting *Roe v. Chater*, 92 F.3d 672, 676-77 (8th Cir. 1996)).

Taormina argues that the ALJ relied upon testimony from vocational expert Gravatt stemming from a hypothetical question that failed to consider all of Taormina's impairments and the consequences of those impairments. The ALJ asked the following hypothetical question in the hearing:

> Q: [T]he vocational characteristics are – education are high school or better; younger individual; work history as the work as a hair stylist. . . . In addition, she's able to understand, remember, and carry out two to three-step instructions; and can interact appropriately with supervisors, coworkers, and the public something less than half the time which would be occasional to frequent with no other limitations in the area of making judgments in a work setting or responding appropriately in a work setting and the changes within those parameters. Can you identify any jobs that person could do?

AR 56-57. In support of her argument, Taormina cites a portion of Pelc's testimony where he answered affirmatively to the following questions from her attorney: (1) "So, Dr. Pelc . . . just to clarify, you think that [Taormina] could respond appropriately to supervisors or coworkers on an occasional basis, meaning less than one-half of the time?" and (2) "[Taormina] could respond appropriately to work situations or changes in the work setting occasionally or in other words, less than one-half of the time?" AR 39. According to Taormina, the ALJ's reliance upon the hypothetical constitutes reversible error because Pelc answered affirmatively to those questions.

In response, the Commissioner argues that the hypothetical question posed to Gravatt accurately reflected Taormina's impairments. Specifically, the Commissioner asserts that the ALJ's RFC finding is virtually identical to the hypothetical question. Finding number five in the ALJ's decision details Taormina's RFC. AR 12. In part, it states the following:

> She can understand, remember, and carry out no more than two and three step instructions, which is more than simple and repetitive work. She can interact appropriately with coworkers, supervisors, or the public somewhat less than one-half of the time, which his occasionally to frequently. Within the foregoing parameters, she has no limitations in her ability to make work-related judgments in a routine work setting or respond appropriately to usual work situations and changes in a typical work setting.

*Id.* This RFC finding is indistinguishable from the impairments described in the hypothetical question posed to Gravatt. While the testimony cited by Taormina does indicate that Pelc responded affirmatively to those questions, the ALJ did not find that Taormina suffers from difficulties adjusting to changes in the

19

work place. Furthermore, on the same page of the record cited by Taormina, Pelc responded to a question posed by the ALJ where Pelc states that Taormina would be able to respond appropriately to changes in a work setting. AR 39. Thus, the hypothetical utilized impairments found in the eventual RFC finding as well as testimony provided during the hearing.

When an ALJ utilizes a hypothetical while examining a vocational expert, Eighth Circuit precedent mandates that the hypothetical question accurately reflect the impairments suffered by the claimant. *Lacroix*, 465 F.3d at 889; *Hunt*, 250 F.3d at 625. The ALJ's hypothetical considers impairments and symptom-related consequences that are indistinguishable from the RFC allocated to Taormina. Taormina attempts to question the validity of the hypothetical by citing inconsistency in testimony provided during the administrative hearing even though she has neither challenged the validity of the RFC determination nor has she cited concrete consequences of the RFC finding that are absent from the hypothetical. Because the individual impairments and symptom-related consequences utilized in the hypothetical match Taormina's RFC finding, substantial evidence supports the ALJ's reliance upon the vocational-expert testimony. Thus, the ALJ's determination is affirmed.

### CONCLUSION and ORDER

The ALJ allocated proper weight to the testimony provided by Dr. Jewitt and Taormina. Additionally, the ALJ relied upon vocational expert testimony

elicited from a properly phrased hypothetical. Because substantial evidence supports the ALJ's decision,

      IT IS ORDERED that the decision of the Commissioner is AFFIRMED.

      Dated December 31, 2015.

                    BY THE COURT:

                    /s/ *Karen E. Schreier*
                    KAREN E. SCHREIER
                    UNITED STATES DISTRICT JUDGE